No. 25-10668

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

BILL WORD; DAVID DAQUIN,

Plaintiffs-Appellants,

v.

U.S. DEPARTMENT OF ENERGY,

Defendant-Appellee.

On Appeal from the United States District Court
for the Northern District of Texas

## BRIEF FOR APPELLEE

JEFFREY NOVAK
*Acting General Counsel*
*Department of Energy*
*Washington, D.C. 20585*

BRETT A. SCHUMATE
*Assistant Attorney General*

NANCY LARSON
*Acting United States Attorney*

MICHAEL S. RAAB
AMANDA L. MUNDELL
*Attorneys, Appellate Staff*
*Civil Division, Room 7252*
*U.S. Department of Justice*
*950 Pennsylvania Avenue, N.W.*
*Washington, D.C. 20530*
*(202) 514-3469*

# CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as defendant-appellee is a governmental party.  5th Cir. R. 28.2.1.

*s/ Amanda L. Mundell*
Amanda L. Mundell

## STATEMENT REGARDING ORAL ARGUMENT

Appellee does not believe that oral argument is necessary to resolve this appeal, but we stand ready to present argument if it would be of assistance to the Court.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

STATEMENT OF JURISDICTION .......................................................................... 2

STATEMENT OF THE ISSUE ................................................................................. 2

STATEMENT OF THE CASE ................................................................................... 2

    A.    Statutory Background ................................................................................ 2

    B.    Regulatory Background ............................................................................ 5

    C.    Prior Proceedings ..................................................................................... 6

SUMMARY OF ARGUMENT ............................................................................... 10

STANDARD OF REVIEW ..................................................................................... 11

ARGUMENT ........................................................................................................... 11

I.     Plaintiffs Lack Standing To Obtain The Relief They Seek. ............................... 11

II.    The District Court Correctly Concluded It Lacked Jurisdiction. ....................... 16

    A.    This Court Has Exclusive Jurisdiction To Hear Plaintiffs'
          Challenge To The Department's Final Rules ........................................... 16

    B.    Plaintiffs' Contrary Arguments Lack Merit ............................................ 24

CONCLUSION ........................................................................................................ 35

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Abbott Lab'ys v. Gardner,*
 287 U.S. 136 (1967) .................................................................. 8, 28, 29

*American Fed. of Gov. Emps. v. Secretary of Air Force,*
 716 F.3d 633 (D.C. Cir. 2013) ................................................... 33

*Amusement & Music Operators Ass'n v. Copyright Royalty Tribunal,*
 636 F.2d 531 (D.C. Cir. 1980) ................................................... 19

*Axon Enter., Inc. v. Federal Trade Comm'n,*
 598 U.S. 175 (2023) .................................................. 22, 23, 28, 29

*Bank of La. v. FDIC,*
 919 F.3d 916 (5th Cir. 2019) ........................................ 16, 17, 21

*Bowles v. Russell,*
 551 U.S. 205 (2007) .................................................................. 17

*California Energy Comm'n v. Department of Energy,*
 585 F.3d 1143 (9th Cir. 2009) ................................................... 20

*City of Los Angeles v. Lyons,*
 461 U.S. 95 (1983) .................................................................... 16

*Cochran v. U.S. Sec. & Exch. Comm'n,*
 20 F.4th 194 (5th Cir. 2021) ..................................................... 32

*Doe v. Tangipahoa Par. Sch. Bd.,*
 494 F.3d 494 (5th Cir. 2007) ..................................................... 14

*Elgin v. Department of the Treasury,*
 567 U.S. 1 (2012) ................................................................ 17, 23

*Federal Commc'ns Comm'n v. ITT World Commc'ns, Inc.,*
 466 U.S. 463 (1984) .................................................................. 25

*Federal Election Comm'n v. Reform Party of U.S.,*
 479 F.3d 1302 (11th Cir. 2007) ........................................... 19, 27

*Ford v. NYLCare Health Plans of the Gulf Coast, Inc.,*
 301 F.3d 329 (5th Cir. 2002) ..................................................... 12

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010) ........................................................................ 17, 21, 33

*Hochendoner v. Genzyme Corp.*,
    828 F.3d 724 (1st Cir. 2016) ...................................................... 15

*Hotze v. Burwell*,
    784 F.3d 984 (5th Cir. 2015) ...................................................... 15

*Iowa League of Cities v. EPA*,
    711 F.3d 844 (8th Cir. 2013) ...................................................... 18, 22

*Jarkesy v. SEC*,
    803 F.3d 9 (D.C. Cir. 2015) ........................................................ 33

*JTB Tools & Oilfield Servs., LLC v. United States*,
    831 F.3d 597 (5th Cir. 2016) ...................................................... 11, 19

*Leal v. Szoeke*,
    917 F.2d 206 (5th Cir. 1990) ...................................................... 19, 27

*Leedom v. Kyne*,
    358 U.S. 184 (1958) .................................................................... 24

*Ligon v. LaHood*,
    614 F.3d 150 (5th Cir. 2010) ...................................................... 27

*Louisiana v. U.S. Dep't of Energy*,
    90 F.4th 461 (5th Cir. 2024) ...................................................... 12, 13, 32

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................... 12, 13

*Miriyeva v. U.S. Citizenship & Immigration Servs.*,
    9 F.4th 935 (D.C. Cir. 2021) ...................................................... 34

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) .................................................................... 20

*Natural Res. Def. Council v. Abraham*,
    355 F.3d 179 (2d Cir. 2004) ...................................................... 2, 20, 21

*Nuclear Regul. Comm'n v. Texas*,
    605 U.S. 665 (2025) .................................................................... 18, 24, 25, 30

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
566 U.S. 639 (2012) ............................................................ 20, 27

*Spencer v. Kemna,*
523 U.S. 1 (1998) ................................................................ 14

*Stallworth v. Bryant,*
936 F.3d 224 (5th Cir. 2019) ............................................. 14

*Thunder Basin Coal Co. v. Reich,*
510 U.S. 200 (1994) ....................................................... 11, 18, 21

*Telecommunication Rsch. & Action Ctr. v. v. Federal Commc'ns Comm'n,*
750 F.2d 70 (D.C. Cir. 1984) ........................................... 19, 27

*Weissman v. National R.R. Passenger Corp.,*
21 F.4th 854 (D.C. Cir. 2021) ........................................... 12

*Whitmore v. Arkansas,*
495 U.S. 149 (1990) ........................................................... 13

**Statutes:**

Energy Independence and Security Act of 2007,
Pub. L. No. 110-140, § 311(a)(2), 121 Stat. 1492, 1563-64 ......................................... 3

Administrative Procedure Act (APA):
5 U.S.C. §§ 701-706 ........................................................ 4
5 U.S.C. § 706(2)(C) ....................................................... 18, 22

15 U.S.C. § 78bb(a)(2) ..................................................... 29
21 U.S.C. § 371(f)(6) ....................................................... 28
28 U.S.C. § 1291 ............................................................. 2
28 U.S.C. § 1331 ............................................................. 2, 17
28 U.S.C. § 1346(a)(2) ..................................................... 2

42 U.S.C. § 6295 ............................................................ 16
42 U.S.C. § 6295(g)(9) ..................................................... 3
42 U.S.C. § 6295(g)(9)(A)(ii) ........................................... 3
42 U.S.C. § 6295(g)(9)(B) ............................................... 3
42 U.S.C. § 6295(g)(10) ................................................... 3

42 U.S.C. § 6295(g)(10)(A)(i)-(ii) ............................................... 3
42 U.S.C. § 6295(g)(10)(B) ......................................................... 3
42 U.S.C. § 6295(p) .................................................................. 17
42 U.S.C. § 6295(p)(4) ................................................................ 3
42 U.S.C. § 6295(p)(4)(A) ........................................................... 3
42 U.S.C. § 6295(p)(4)(A)(i) ........................................................ 3
42 U.S.C. § 6306 ...................................................................... 16
42 U.S.C. § 6306(b) ................................................................... 10
42 U.S.C. § 6306(b)(1) ...................................................... 4, 8, 18
42 U.S.C. § 6306(b)(2) ......................................................... 4, 22
42 U.S.C. § 6306(b)(4) .......................................................... 4, 8
42 U.S.C. § 6306(c) ........................................................... 19, 27
42 U.S.C. § 6306(c)(1) ............................................................... 4
42 U.S.C. § 6306(c)(2) ............................................................... 4
45 U.S.C. § 355(f) ..................................................................... 19

**Rules:**

Federal Rule of Civil Procedure 59(e) ......................................... 8

**Legislative Materials:**

H.R. Rep. No. 75-2139 (1938) .................................................. 28

**Other Authorities:**

Energy Conservation Program: Energy Conservation Standards for
    Residential Dishwashers, 77 Fed. Reg. 31,918 (May 30, 2012) ................... 5

Energy Conservation Program: Energy Conservation Standards for
    Residential Clothes Washers, 77 Fed. Reg. 32,308 (May 31, 2012) ............. 5

Energy Conservation Program: Energy Conservation Standards for
    Residential Clothes Washers, 89 Fed. Reg. 19,026 (Mar. 15, 2024) ........... 5

Energy Conservation Program: Energy Conservation Standards for
    Dishwashers, 89 Fed. Reg. 31,398 (Apr. 24, 2024) ................................. 5

Rescinding the Amended Water Use Standards for Residential
    Dishwashers, 90 Fed. Reg. 20,859 (May 16, 2025) ............................... 6

Energy Conservation Program: Energy Conservation Standards for
Residential Clothes Washers, 90 Fed. Reg. 20,890 (May 16, 2025) .......................... 6

## INTRODUCTION

The Energy Policy and Conservation Act (EPCA) authorizes the Department of Energy to promulgate rules that set or amend energy-efficiency standards for certain appliances and water-efficiency standards for others. In 2012, the Department issued two direct final rules that amended Congressionally-set efficiency standards for dishwashers and clothes washers. In 2024, the Department further amended these standards. Plaintiffs filed suit in district court challenging the 2024 rules on the ground that the Department lacks the statutory authority to regulate water usage for dishwashers and clothes washers. But the district court dismissed the suit for lack of jurisdiction. Citing EPCA's jurisdictional provisions, the district court recognized that the courts of appeals have exclusive jurisdiction over challenges to EPCA final rules.

That decision was correct. Section 6306(b)(1) of EPCA vests courts of appeals with jurisdiction to decide challenges to final rules, including those issued here. Jurisdictional provisions like these are exclusive in nature; they divest the district court of jurisdiction to hear the same claims. EPCA's plain text should therefore be the end of the matter. Plaintiffs' arguments to the contrary lack merit. Among other things, EPCA neither explicitly nor implicitly preserves a district court's equitable jurisdiction to hear challenges to rulemakings, especially where plaintiffs' claim merely questions the application of the Department's statutory authority under EPCA.

## STATEMENT OF JURISDICTION

Below, plaintiffs invoked the district court's subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1346(a)(2) (civil suit against an agency of the United States). ROA.1. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court correctly dismissed plaintiffs' suit for lack of subject matter jurisdiction.

## STATEMENT OF THE CASE

### A. Statutory Background

The Energy Policy and Conservation Act of 1975 was passed "following the oil embargo imposed by the Organization of Oil Producing and Exporting Countries ('OPEC') in 1973" and associated energy crisis. *Natural Res. Def. Council v. Abraham*, 355 F.3d 179, 185 (2d Cir. 2004). Among other things, the drafters of the law sought to reduce demand for energy by improving the energy efficiency of consumer products. *Id.* The statute initially focused on "improving the energy efficiency of thirteen named home appliances that Congress determined contributed significantly to domestic energy demand." *Id.* It also vested the Administrator of the Federal Energy Administration (a precursor agency to the Department of Energy) with discretion to regulate additional products that he determined similarly contributed to energy demand. *Id.*

In 2007, Congress amended EPCA and established energy and water use performance standards for residential dishwashers and clothes washers. *See* Energy Independence and Security Act of 2007, Pub. L. No. 110-140, § 311(a)(2), 121 Stat. 1492, 1563-64 (adding 42 U.S.C. §§ 6295(g)(9), 6295(g)(10)). The amendment included water-efficiency standards. *Id.* (adding 42 U.S.C. §§ 6295(g)(9)(A)(ii), 6295(g)(10)(A)(i)–(ii)). Congress also directed the Secretary of Energy to publish final rules, by certain dates, "determining whether to amend the standards" for dishwashers and clothes washers. *Id.* (adding 42 U.S.C. §§ 6295(g)(9)(B), 6295(g)(10)(B)).

EPCA authorizes the Department to promulgate a "direct final rule" (DFR) under certain circumstances. *See* 42 U.S.C. § 6295(p)(4). As relevant here, upon "receipt of a statement that is submitted jointly by interested persons that are fairly representative of relevant points of view (including representatives of manufacturers of covered products, States, and efficiency advocates)," *id.* § 6295(p)(4)(A), if the Secretary "determines that the recommended standard contained in the statement is in accordance with subsection (o) [criteria for new or amended standards] of" EPCA, *id.* § 6295(p)(4)(A)(i), then the Department "may issue a final rule that establishes an energy or water conservation standard," *id.* That "direct final rule" is "published simultaneously with a notice of proposed rulemaking that proposes a new or amended energy or water conservation standard that is identical to the standard established in the [DFR]." *Id.*

EPCA also provides a means for challenging efficiency standards promulgated by the Department, including those contained in DFRs. "Any person who will be adversely affected by a rule prescribed under section . . . 6295 . . . may[] . . . file a petition with the United States court of appeals for the circuit in which such person resides or has his principal place of business, for judicial review of such rule." 42 U.S.C. § 6306(b)(1). Section 6306(b) further provides that once such a petition is filed, a court of appeals "shall have jurisdiction to review the rule in accordance with [the Administrative Procedure Act (APA)] and to grant appropriate relief as provided in [5 U.S.C. §§ 701-706 of the APA]." *Id.* § 6306(b)(2). These APA "remedies . . . shall be in addition to, and not in substitution for, any other remedies provided by law." *Id* § 6306(b)(4).

Section 6306 identifies only two actions where "[j]urisdiction is vested in the Federal district courts of the United States," although neither is applicable here. First, federal district courts have jurisdiction over actions brought by "any adversely affected person to determine whether a State or local government is complying with the requirements of [certain EPCA provisions]." 42 U.S.C. § 6306(c)(1). Second, district courts have jurisdiction over actions brought by "any person who files a petition under section 6295(n) . . . which is denied by the Secretary [of Energy]."[1] *Id.* § 6306(c)(2).

_____

[1] Section 6295(n) of Title 42 of the U.S. Code governs petitions to conduct a rulemaking to determine whether standards contained in a final rule should be amended.

## B. Regulatory Background

The Department first issued DFRs pertaining to dishwashers and clothes washers in May 2012. *See* Energy Conservation Program: Energy Conservation Standards for Residential Clothes Washers, 77 Fed. Reg. 32,308 (May 31, 2012) (2012 Clothes Washers DFR); Energy Conservation Program: Energy Conservation Standards for Residential Dishwashers, 77 Fed. Reg. 31,918 (May 30, 2012) (2012 Dishwashers DFR). Those standards persisted until the Department issued the DFRs that gave rise to this lawsuit. *See* Energy Conservation Program: Energy Conservation Standards for Dishwashers, 89 Fed. Reg. 31,398 (Apr. 24, 2024) (Dishwashers DFR); Energy Conservation Program: Energy Conservation Standards for Residential Clothes Washers, 89 Fed. Reg. 19,026 (Mar. 15, 2024) (Clothes Washers DFR). These DFRs amended the 2012 water-efficiency and energy-efficiency standards for residential dishwashers and clothes washers.

In May 2025, the Department issued notices proposing to rescind the DFRs' amended water use standards for residential dishwashers and clothes washers and to return the water use requirements for those appliances to the statutory standards set by Congress. *See* Rescinding the Amended Water Use Standards for Residential Dishwashers, 90 Fed. Reg. 20,859 (May 16, 2025) (proposing to rescind amended water use standards for dishwashers and return standard size dishwashers to the statutory standard of 6.5 gallons per cycle and return compact size dishwashers to the statutory standard of 4.5 gallons per cycle); Energy Conservation Program: Energy Conservation

Standards for Residential Clothes Washers, 90 Fed. Reg. 20,890 (May 16, 2025) (proposing to rescind amended water use standards for residential clothes washers and return to the statutory water factor of not more than 9.5). The Department explained that it had "reconsidered the statutory authority for its water use regulations" of residential dishwashers and clothes washers and "concluded that the authority likely does not permit the regulations." 90 Fed. Reg. at 20,859; 90 Fed. Reg. at 20,891. The comment period has closed, and the Department is evaluating the comments.

### C. Prior Proceedings

Plaintiffs Bill Word and David Daquin are "consumers of consumer appliances" that they claim are unlawfully regulated by the Department of Energy. ROA.17. They brought this lawsuit in federal district court on June 13, 2024, alleging that the Department of Energy exceeded its statutory authority under EPCA when promulgating rules amending current water-efficiency standards for residential dishwashers and clothes washers. ROA.1; *see also* ROA.8 (alleging ultra vires agency action). Plaintiffs sought "declaratory relief that [the Department] is currently without lawful authority to amend the water efficiency requirements of appliances other than showerheads, faucets, water closets, or urinals." ROA.18. Plaintiffs also sought an injunction directing the Department to "issue new regulations" returning the water-efficiency standards for dishwashers and clothes washers to the minimums set by Congress, as well as an injunction barring the Department from "issuing further water-

efficiency rules for appliances other than showerheads, faucets, water closets, or urinals, absent any future statutory authority."[2]  ROA.18.

The government moved to dismiss the complaint on the grounds that (1) EPCA vests in circuit courts exclusive jurisdiction to hear challenges to EPCA final rules, and (2) plaintiffs failed to meet their burden to show Article III standing.  ROA.385-92.

The district court granted the government's motion and dismissed the suit for lack of subject matter jurisdiction.  ROA.451, 454.  Without addressing plaintiffs' standing to bring suit, the court concluded that EPCA confers exclusive appellate jurisdiction over challenges to final rules.  *See* ROA.453, 454.  The court explained that "[e]xclusive appellate jurisdiction is especially apt in the EPCA context."  ROA.453. The court first observed that the "EPCA's plain text precludes" district court jurisdiction here.  ROA.454.  The court explained that "Section 6306(b)(1) is a 'general grant of jurisdiction'" with "only two discreet issues subject to district-court review"— "actions to determine whether a state or local government meets EPCA requirements or for petitions filed under Section 6295(n)."  ROA.453-54 (citation omitted).  But "[n]either of the[se] foregoing discreet jurisdictional grants [is] at issue here." ROA.454. Moreover, the court explained, plaintiffs' challenge is "more appropriate for appellate review" because there is no need for any "factfinding by a district court to effectuate the review process."  ROA.454 (quotations omitted).  The court rejected plaintiffs'

---

[2] Plaintiffs' complaint does not take issue with the DFRs' energy-efficiency standards.

contention that the use of the word "may" in § 6306(b)(1) was intended to confer only concurrent jurisdiction to the courts of appeals, explaining that "here, 'may' means 'must' in the context of EPCA jurisdictional grants." ROA.454.

Plaintiffs moved under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment, arguing that 42 U.S.C. § 6306(b)(4)—which states that the remedies identified in § 6306(b) (namely, remedies available under the APA, *see id.* § 6306(b)(1), (2)) shall be "in addition to, and not in substitution for, any other remedies provided by law"—provides an "exception to the exclusive jurisdiction of the appellate court" and permits judicial review of the Department's DFRs in district court. ROA.460. Plaintiffs contended that the district court failed to address this "savings clause" or the Supreme Court's opinion in *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967). *Id.*

The district court denied the motion. ROA.501-03. The court rejected plaintiffs' contention that section 6306(b)(4) rendered the court's jurisdictional conclusion erroneous, stating that "no such error has occurred." ROA.501. The court also explained that it had "carefully reviewed all of the parties' legal and factual contentions prior to issuing its Order, taking into consideration the entirety of all arguments presented." ROA.501. The court stated that "[l]ack of discussion does not equate to lack of consideration—parties are not automatically entitled to a fulsome discussion of every argument raised"—and that the court had "deliberately tailored its Order to a discussion of 42 U.S.C. Section 6306(b)(1)." ROA.501.

The district court further explained that "*Abbot Laboratories* does not apply to the instant case[]" because "*Abbott Laboratories* interprets the Food, Drug, and Cosmetic Act of 1938 ('FDCA')—a materially different statute from the EPCA." ROA.502. The court highlighted the fact that the FDCA "provides exclusive appellate review of the validity of" orders under "six specific sections" of the statute, but "the plaintiffs in *Abbott Laboratories* sought to extend this application of exclusive appellate review to a seventh, unenumerated section." ROA.502. In those circumstances, the district court explained, the Supreme Court looked to the "context of the entire legislative scheme" to determine whether Congress intended to bar pre-enforcement review of orders arising under non-enumerated sections of the statute. ROA.502. The district court concluded that "[t]he same need for inference fails to manifest in the instant case." ROA.502. "The relevant portion of the EPCA . . . provides for exclusive appellate review" of a rule prescribed under section 6295," and "[p]laintiffs' claims arose under Section 6295." ROA.502. "Accordingly, considerations of legislative history and congressional intent as found in *Abbott Laboratories*—lending to the Supreme Court's finding of concurrent jurisdiction—are unnecessary." ROA.502. The court emphasized that "the explicit text of the [EPCA] is clear," that the "FDCA and the EPCA are entirely different statutes with different legislative histories," and that the presence of a "textually similar savings clause" in both statutes "does not warrant . . . application of *Abbott Laboratories*" to this case. ROA.503.

# SUMMARY OF ARGUMENT

Plaintiffs' suit was properly dismissed for two independent reasons. First, although the district court did not reach the question of plaintiffs' standing, this Court has an independent obligation to determine plaintiffs' standing and can affirm the district court's dismissal on any basis supported by the record. Plaintiffs' complaint fails to adequately plead facts necessary to determine that they have standing. Indeed, plaintiffs do not even allege any concrete plan to purchase a dishwasher or clothes washer that would be rendered unavailable by the DFRs.

Even if plaintiffs could satisfy Article III's standing requirement, EPCA precludes plaintiffs from pursuing their challenge to the DFRs in a federal district court. Pursuant to 42 U.S.C. § 6306(b), this Court has exclusive jurisdiction of the issues raised in plaintiffs' complaint, as the district court correctly held. The sole issue raised in plaintiffs' complaint is whether the DFRs issued by the Department were unlawful because, as alleged, EPCA does not permit the agency to amend water-use standards for these appliances. Although framed as a non-statutory ultra vires claim, plaintiffs' challenge is statutory in nature, since it rises or falls on an interpretation of EPCA's provisions authorizing amendments to water-efficiency standards. Under § 6306(b)(1), "judicial review" of the Department's final rules is vested in the courts of appeals, and district courts possess only limited original jurisdiction described in § 6306(c), which does not apply to plaintiffs' claims. Thus, whether viewed as a matter of explicit or implicit preclusion, § 6306(b)(1) displaces whatever traditional equitable jurisdiction a

district court may have exercised over plaintiffs' claims. To the extent they bear on the statutory review provision here, the factors articulated in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), reinforce this conclusion: EPCA provides plaintiffs with meaningful review in the courts of appeals, and plaintiffs' challenge is precisely the sort of challenge that the statute channels to the appellate courts. EPCA therefore requires this Court to adjudicate plaintiffs' challenge, not the district court.

Plaintiffs' contrary arguments are unavailing. Among other things, EPCA's remedies provision does not preserve a district court's jurisdiction to hear plaintiffs' challenge. That provision addresses the scope of relief available upon judicial review of an agency's final rule; it does not change § 6306(b)(1)'s specific and exclusive grant of jurisdiction to the court of appeals.

## STANDARD OF REVIEW

This Court reviews a district court's Rule 12(b)(1) dismissal for lack of subject-matter jurisdiction de novo. *JTB Tools & Oilfield Servs., LLC v. United States*, 831 F.3d 597, 599 (5th Cir. 2016).

## ARGUMENT

## I.      Plaintiffs Lack Standing To Obtain The Relief They Seek.

Although not addressed by the district court, this Court has an independent obligation to determine whether plaintiffs have standing to bring this suit. *See Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 301 F.3d 329, 331-32 (5th Cir. 2002). On that score, plaintiffs bear the burden; they must adequately plead an injury in fact that

is fairly traceable to the challenged conduct and likely to be redressed by a decision in their favor. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs' complaint fails to satisfy that burden.

Plaintiffs' allegations of standing amount to two brief sentences in their complaint: They allege, as "consumers of consumer appliances," that the DFRs have "eliminate[d]" "their choice of a preferred clothes washer or dishwasher." ROA.17. But an alleged reduction in choice, by itself, is insufficient to establish standing to challenge the DFRs. As this Court has explained, "compression in market availability of 'desirable features'" qualifies as an injury only if the plaintiffs are "participants in the relevant market." *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 467 (5th Cir. 2024). And here, the "relevant market" is the market for dishwashers and clothes washers that contain the "features" that plaintiffs "desir[e]." *Id.* (quoting *Weissman v. National R.R. Passenger Corp.*, 21 F.4th 854, 858-59 (D.C. Cir. 2021)). So, in order to rely on a "lost opportunity to purchase" theory of standing, plaintiffs must, at a minimum, (1) allege what features of dishwashers and clothes washers are desirable, (2) allege that the DFRs "compress[]" the "market availability" of those features, and (3) allege an intent to purchase appliances with those features if they had not been rendered unavailable by the DFRs. *See id.* at 467-70. Allegations regarding an intent to purchase are particularly important, because absent allegations of an intent to enter the market, plaintiffs could not meet either the injury-in-fact or traceability requirements of standing. *Lujan*, 504 U.S. at 560 (explaining that an injury must be "concrete and particularized" and "actual

or imminent," and "fairly . . . trace[able] to the challenged action") (alterations in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

Plaintiffs' complaint is silent on these points: The complaint does not specifically identify what features of dishwashers and clothes washers are desirable to plaintiffs or how the DFRs will reduce the availability of those features. Nor does the complaint allege a concrete plan to purchase any dishwasher or clothes washer, let alone ones rendered unavailable by the challenged DFRs. Plaintiffs' allegations therefore fall far short of those in *Louisiana*, where the petitioners there "submitted multiple declarations to establish they own, operate, and maintain residential . . . dishwashers[] . . . [and] clothes washers," and where petitioners' declarations had "further established that, given an opportunity, they would replace those appliances" with alternative appliances that were affected by the challenged rule. 90 F.4th at 468-70. Instead, plaintiffs' complaint more closely resembles the nonspecific, "some day" allegations in *Lujan* that do not "support a finding of the 'actual or imminent' injury" the Supreme Court has required. 504 U.S. at 564.

Plaintiffs cannot make up for these deficiencies by belatedly addressing them in their brief before this Court. *See* Br. 11 (asserting for the first time that "[h]igher water use is a desirable feature for Plaintiffs"). Nor can they rely solely on what this Court might "infer" from the only two sentences addressing standing in plaintiffs' complaint. *See* Br. 11. (arguing that "[i]t is entirely reasonable to infer that Plaintiffs' preferred clothes washer or dishwasher eliminated by the rules are those that use the amount of

water which Congress established as the legal limit"). It is a "long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' but rather must affirmatively appear in the record." *Spencer v. Kemna*, 523 U.S. 1, 10-11 (1998); *see also, e.g.*, *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 497 (5th Cir. 2007) (where plaintiffs failed to allege that they were actually present for and exposed to invocations that allegedly violated the Establishment Clause, the Court was not "permitted" to "infer" that they were, notwithstanding counsel's representations that such "proof deficiency was unintentional").

Even if, "at this stage of litigation, [this Court] may draw reasonable inferences from the pleadings to decide standing," any inferences required to establish plaintiffs' standing would impermissibly go "beyond the facts pleaded." *Stallworth v. Bryant*, 936 F.3d 224, 232 (5th Cir. 2019). For example, although plaintiffs now contend on appeal that it is "reasonable to infer that Plaintiffs' preferred clothes washer or dishwasher eliminated by the rules are those that use the amount of water which Congress established as the legal limit," Br. 11 (quotation omitted), their complaint does not support that inference. The DFRs that plaintiffs challenge did not amend Congress's limits on water usage at all, but instead amended the limits contained in the May 2012 DFRs. Thus, when plaintiffs' complaint asserts that they are "harmed" because the 2024 DFRs eliminate their preferred dishwashers or clothes washers, the only reasonable inference this Court could draw is that plaintiffs prefer certain (unidentified) features of dishwashers and clothes washers that are currently available (*i.e.*, those

14

appliances subject to the 2012 DFRs)—not, as plaintiffs' brief now urges, appliances that may have been subject to Congress's lower water-use limits 13 years ago.

Nor can plaintiffs resort to inference to show an intent to purchase appliances that the DFRs may "eliminate[]," since nothing in plaintiffs' complaint (beyond a bare allegation that they are "consumers of consumer appliances") remotely indicates a plan to actually buy the relevant appliances in the near term. Even at the pleading stage, standing must be supported by something beyond mere speculation. *See Hochendoner v. Genzyme Corp.*, 828 F.3d 724, 731 (1st Cir. 2016) (explaining that to demonstrate standing "at the pleading stage, . . . [n]either conclusory assertions nor unfounded speculation can supply the necessary heft"). And this Court "cannot create [its] own jurisdiction by embellishing otherwise deficient allegations of standing." *Hotze v. Burwell*, 784 F.3d 984, 996 (5th Cir. 2015) (alterations and quotations omitted).

Plaintiffs' complaint similarly fails to allege facts that could demonstrate an injury in fact or traceability with respect to any other appliances they believe are unlawfully regulated. Because plaintiffs identify no such appliances besides dishwashers and clothes washers, they have failed to demonstrate standing to obtain broad declaratory or injunctive relief aimed at any regulations of other, unspecified products. Plaintiffs also cannot obtain a freestanding order broadly declaring a lack of authority to promulgate water-use standards that is untethered from any specific action by the agency. And plaintiffs' request for prospective injunctive relief, barring the agency from issuing regulations in the future, is similarly improper, because without final agency

action—*i.e.,* regulations promulgated by the Department—there can be no conceivable injury to plaintiffs and, as a result, no case or controversy. *Cf. City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.") (alteration omitted).

## II. The District Court Correctly Concluded It Lacked Jurisdiction.

Pursuant to 42 U.S.C. § 6306, courts of appeals have jurisdiction over actions challenging rules prescribed under, *inter alia*, 42 U.S.C. § 6295. Because plaintiffs' action is a challenge to rules prescribed under § 6295, it falls within the scope of § 6306(b)(1). That jurisdiction is ordinarily considered exclusive, and the statute's text and structure confirm that to be the case. But even if this Court were to consider the factors articulated in *Thunder Basin*, those factors would warrant dismissal of plaintiffs' district court suit.

### A. This Court Has Exclusive Jurisdiction To Hear Plaintiffs' Challenge To The Department's Final Rules.

1. "Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007). Although federal district courts "[a]s a general matter . . . have subject matter jurisdiction over all civil cases arising under the Constitution and federal law," Congress sometimes "leapfrogs district courts by channeling claims" elsewhere. *Bank of La. v. FDIC*, 919 F.3d 916, 922 (5th Cir. 2019).

When it does, "federal district courts lack subject matter jurisdiction to hear those claims." *Id.*

Congress may preclude district court jurisdiction explicitly, by "expressly limit[ing] the jurisdiction that other statutes," like 28 U.S.C. § 1331, "confer on district courts." *Bank of La.*, 919 F.3d at 923 (quoting *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010)). Or Congress may do so implicitly. To find implicit preclusion, this Court considers whether (1) it is "fairly discernible from the text, structure, and purpose of the statutory scheme that Congress intended to preclude district court jurisdiction," and whether (2) the "claims at issue are of the type Congress intended to be reviewed within th[e] statutory structure." *Id.* (alteration in original) (first quoting *Elgin v. Department of the Treasury*, 567 U.S. 1, 10 (2012); and then quoting *Free Enter. Fund*, 561 U.S. at 489). Courts "presume that Congress does not intend to limit jurisdiction if 'a finding of preclusion could foreclose all meaningful judicial review'; if the suit is 'wholly collateral to a statute's review provisions'; and if the claims are 'outside the agency's expertise.'" *Free Enter. Fund*, 561 U.S. at 489 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994)).

2. Against this backdrop, the district court correctly determined that it lacked jurisdiction over plaintiffs' suit. Plaintiffs challenge two direct final rules issued under 42 U.S.C. § 6295(p). Although styled as a challenge to ultra vires agency action, plaintiffs' claims are properly viewed as statutory in nature: They allege that the Department violated the terms of EPCA by regulating water usage for unenumerated

17

appliances.  *See Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 683 (2025) (plaintiffs' claim that agency acted ultra vires because its statutory licensing authority did not extend to off-site facilities for the storage of nuclear fuel was merely a "statutory-authority argument" "dress[ed] up . . . as an ultra vires claim").  That is no different from an APA claim asserting that the agency exceeded its statutory authority in promulgating a challenged rule.  *See* 5 U.S.C. § 706(2)(C); *Iowa League of Cities v. EPA*, 711 F.3d 844, 876 (8th Cir. 2013) (Section 706(2)(C) "authorizes courts to strike down as ultra vires agency rules promulgated without valid statutory authority.").  Plaintiffs' challenge thus sits comfortably within § 6306(b)(1)'s jurisdictional framework, which directs that anyone "adversely affected" by a final rule issued under § 6295 "may . . . file a petition with the United States court of appeals for the circuit in which such person resides."  42 U.S.C. § 6306(b)(1).  Accordingly, the plain text of the statute vests this Court with original jurisdiction to hear plaintiffs' challenge.

"[W]here Congress has provided for review jurisdiction in the court of appeals, jurisdiction there is exclusive."  *Leal v. Szoeke*, 917 F.2d 206, 207 (5th Cir. 1990).  This is so "even where Congress has not expressly stated that statutory jurisdiction is 'exclusive,'" because "a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute." *Telecommunication Rsch. & Action Ctr. (TRAC) v. Federal Commc'ns Comm'n*, 750 F.2d 70, 77 (D.C. Cir. 1984); *see also Federal Election Comm'n v. Reform Party of U.S.*, 479 F.3d 1302, 1309 (11th Cir. 2007) (where Congress "specifically designates a forum for judicial

review of administrative action, that forum is exclusive" even though the statute may not use the word "exclusive"); *Amusement & Music Operators Ass'n v. Copyright Royalty Tribunal*, 636 F.2d 531, 534-35 (D.C. Cir. 1980) (where there is a special statutory review procedure in the court of appeals, Congress ordinarily intends that it be exclusive, and neither section 1331, the APA, nor the Declaratory Judgment Act overrides that grant to provide for district court jurisdiction). Indeed, the jurisdictional provision at issue in *Leal* is identical to § 6306(b)(1): like EPCA, 45 U.S.C. § 355(f) states that an aggrieved claimant "may . . . obtain a review of any final decision of the [Railroad Retirement] Board by filing a petition for review . . . in the United States court of appeals for the circuit in which the claimant . . . resides." *Leal* held that "the plain meaning of the statute" conferred exclusive jurisdiction in the courts of appeals to review the Railroad Retirement Board's benefits decision. 917 F.2d at 207; *see also JTB Tools & Oilfield Servs., LLC v. United States*, 831 F.3d 597, 599-600 (5th Cir. 2016) (similar language in the Occupational Safety and Health Act "grants exclusive jurisdiction" to the courts of appeals). The same is true for § 6306(b)(1).

Section § 6306(c) underscores that EPCA does not grant district courts concurrent jurisdiction over the type of challenge that plaintiffs raise here. Section 6306(c) specifically addresses "Jurisdiction . . . in the Federal district courts" and identifies only two types of actions that can be brought there: actions "to determine whether a State or local government is complying with the requirements of [EPCA]" and actions challenging the denial of a petition for rulemaking. 42 U.S.C. § 6306(c).

Neither describes plaintiffs' challenge here, and this specific grant of jurisdiction to the district court serves to constrain what otherwise might have been a broader background presumption of district court jurisdiction. *Cf. RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (explaining the "well established canon of statutory interpretation . . . that the specific governs the general" (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)).

The upshot of this statutory structure is that "most acts undertaken by [the Department] . . . are subject to review by the court of appeals," *Natural Res. Def. Council v. Abraham*, 355 F.3d 179, 193 (2d Cir. 2004), while a smaller subset of those actions are reviewable in the first instance by a district court.

The only courts of appeals to have addressed these jurisdictional provisions are in accord. In discussing EPCA's jurisdictional provisions, the Ninth Circuit explained that Congress intended "one group of cases to be decided initially by the circuit courts"—those described in § 6306(b)(1)—"and another class to be decided in the first instance by the district courts[]"—those described in § 6306(c). *California Energy Comm'n v. Department of Energy*, 585 F.3d 1143, 1148 (9th Cir. 2009). And in *Natural Resources Defense Council*, the Second Circuit held that "the statutory structure of the jurisdictional provisions" contained in § 6306(b)(1) and (c) "favors finding jurisdiction" in the court of appeals for actions involving challenges to the Department of Energy's amendments to the effective dates of certain rules. 355 F.3d at 193. The court of appeals explained that the "dichotomy" between § 6306(b)(1) and (c) "is consistent with the traditional

allocation of reviewing authority." *Id.* "Rulemaking proceedings do not ordinarily necessitate additional factfinding by a district court to effectuate the review process." *Id.* The exceptions contained in § 6306(c), by contrast, "ordinarily would entail additional factfinding, as they do not reflect the culmination of a structured rulemaking process with its attendant record." *Id.* at 193-94. "Such proceedings are therefore appropriately reserved for review by the district court." *Id.* at 194. Accordingly, subject matter jurisdiction over plaintiffs' suit properly resides with this Court, and the district court correctly dismissed the complaint on that basis.

2. Even if this Court were to conclude that § 6306 does not explicitly divest district courts of jurisdiction over plaintiffs' challenge to the DFRs, the same aspects of the statute demonstrate that Congress implicitly precluded district court jurisdiction over plaintiffs' claim. For the same reasons articulated above, it is "fairly discernable" from the text and structure of § 6306(b) and (c) that "Congress intended to preclude district court jurisdiction" over plaintiffs' claims. *Bank of La.*, 919 F.3d at 923; *see Thunder Basin*, 510 U.S. at 204 (concluding that preclusion was "fairly discernible" from the Mine Act's statutory scheme in part due to the statute's provision of *post hoc* review in the courts of appeals).

The remaining *Thunder Basin* factors "reinforce th[is] conclusion." *Bank of La.*, 919 F.3d at 925. First, precluding district court jurisdiction over plaintiffs' claims does not "foreclose all meaningful judicial review," *id.* (quoting *Free Enter. Fund*, 561 U.S. at 489), because plaintiffs still have an avenue for judicial review in the courts of appeals,

including for claims asserting that the agency exceeded its statutory authority in promulgating the DFRs. *See* 42 U.S.C. § 6306(b)(2) (authorizing the courts of appeals to review a challenge in accordance with the APA); 5 U.S.C. § 706(2)(C) (permitting a challenge to the agency's statutory authority); *Iowa League of Cities*, 711 F.3d at 876 (section 706(2)(C) "authorizes courts to strike down as ultra vires agency rules promulgated without valid statutory authority"). Indeed, the Supreme Court has emphasized that "adequate judicial review does not usually demand a district court's involvement," and "[r]eview of agency action in a court of appeals can alone 'meaningfully address[]' a party's claims." *Axon Enter., Inc. v. Federal Trade Comm'n*, 598 U.S. 175, 190 (2023) (second alteration in original).

The second and third *Thunder Basin* factors—whether plaintiffs' challenge is "wholly collateral" to the statutory review scheme and whether the claims falls "outside the agency's expertise"—are ill-suited for cases like this one, since both factors are designed to "reflect in related ways the point of [provisions that require initial review in the administrative agency]—to give the agency a heightened role in the matters it customarily handles, and can apply distinctive knowledge to." *Axon*, 598 U.S. at 186. Unlike the statutes at issue in *Thunder Basin* and its progeny, EPCA does not provide a special review process where claims are first channeled to the agency and then to the courts of appeals. And unlike *Thunder Basin* and its progeny, where the question was whether the statute foreclosed *all* judicial review for a plaintiff's claims, the question here is merely to what court EPCA channels plaintiffs' claims.

Nevertheless, assessing the second factor in light of § 6306(b)(1), plaintiffs' challenge cannot be said to be "wholly collateral" to that review provision. Instead, plaintiffs' challenge precisely what EPCA's review provisions contemplate: a challenge to EPCA final rules. Although plaintiffs have characterized their claim as a non-statutory ultra vires claim, their challenge ultimately attacks the way the Department has chosen to exercise its statutory authority. In other words, unlike *Axon*, where the parties "object[ed] to the [agency's] power generally, not to anything particular about how that power was wielded," 598 U.S. at 193, plaintiffs here object to how the Department wielded its power to regulate water use—by amending water-efficiency standards for products that Congress did not enumerate in §§ 6291(6)(A) and 6295(g)(9)-(10). *See also Elgin*, 567 U.S. at 22 (holding that employees' constitutional challenge to a statute upon which their removal was based was merely an attempt to "reverse the removal decisions," which was not wholly collateral to the statutory review scheme). At a minimum, plaintiffs' claim is no different from an ultra vires APA claim, which is reviewable by the courts of appeals under § 6306(b)(1). Plaintiffs' claim therefore is not wholly collateral to § 6306(b)(1)'s review scheme.

The third *Thunder Basin* factor also has no bearing on the jurisdictional question presented here, since it concerns whether a plaintiff's claims fall "outside the agency's expertise" in order to determine whether certain claims should be heard by the agency in the first instance or by a court. *Axon,* 598 U.S. at 186. In a case like this one, where this Court must decide whether plaintiffs' challenge should be heard by a district court

or by this Court in the first instance, the agency's expertise to adjudicate the question is beside the point.

## B.    Plaintiffs' Contrary Arguments Lack Merit.

1.    The vast majority of plaintiffs' arguments rest on their contentions that their claim sounds in equity and that a non-statutory ultra vires claim is not the type of claim that Congress intended to channel to the courts of appeals in the first instance.  But as explained, plaintiffs' claim is not a true ultra vires claim.  The Supreme Court's "cases have strictly limited nonstatutory ultra vires review to the painstakingly delineated procedural boundaries of [*Leedom v.*] *Kyne.*"  *Nuclear Regul. Comm'n*, 605 U.S. at 681; *see Leedom v. Kyne*, 358 U.S. 184 (1958) (permitting non-statutory review because there is no other mechanism for judicial review available to remedy an order by National Labor Relations Board that was specifically prohibited by statute).  A *Kyne* claim does not arise "simply because an agency has arguably reached 'a conclusion which does not comport with the law'" but instead "applies only when an agency has taken action entirely 'in excess of its delegated powers and contrary to a *specific prohibition*' in a statute."  *Nuclear Regul. Comm'n*, 605 U.S. at 681; *see id.* (describing such a claim as "essentially a Hail Mary pass" that "rarely succeeds" (quotations omitted)).

Plaintiffs' claim does not meet that strict standard.  Instead, like the plaintiffs in *Nuclear Regulatory Commission* who could not "maintain a nonstatutory ultra vires claim," 605 U.S. at 683, plaintiffs here merely "dress up a typical statutory-authority argument as an ultra vires claim"—a "common maneuver when a litigant tries to squeeze its

arguments into the *Leedom v. Kyne* box" and a reason such "claims rarely succeed." *Id.*
at 682. Even when a claim meets the strict requirements of *Kyne*, however, "[u]ltra vires
review is . . . unavailable if, as is usually the case, a statutory review scheme provides
'aggrieved persons with a meaningful and adequate opportunity for judicial review.'"
*Id.* Such was the case in *Nuclear Regulatory Commission*, *see id.* at 682, and here. That is
because EPCA vests courts of appeals with original jurisdiction over challenges to
EPCA final rules without regard to the specific nature of the claim. It therefore does
not matter what source of law plaintiffs invoke to challenge the two DFRs as ultra vires.
However styled, plaintiffs' claim challenges rulemakings described in § 6306(b)(1), and
it falls within § 6306(b)(1)'s jurisdictional grant. As many courts have held, a
jurisdictional grant like that contained in § 6306(b)(1) is exclusive, even though the
statute does not say so explicitly. Moreover, exclusivity in courts of appeals applies to
legal and equitable claims alike. *See Federal Commc'ns Comm'n v. ITT World Commc'ns, Inc.*,
466 U.S. 463, 468 (1984) (explaining that, where exclusive jurisdiction lies in the courts
of appeals, plaintiffs "may not evade these provisions by requesting the District Court
to enjoin [as *ultra vires*] action that is the outcome of the agency's order").

Plaintiffs nevertheless urge that challenges to the DFRs are "not confined to
[§ 6306(b)(1)'s] appellate review mechanisms" because they contend that rules issued
ultra vires cannot "qualify as a 'rule prescribed under section . . . 6295." Br. 26. But
that argument cannot be reconciled with § 6306(b)(2), which authorizes courts of
appeals to review a final rule "in accordance with" the APA, and the text of the APA

itself, which authorizes a court to set aside a rule that was issued ultra vires. Plaintiffs do not explain why Congress would have stripped district courts of jurisdiction to adjudicate ultra vires APA claims but not non-statutory ultra vires claims that rest on the same theory. Nor can plaintiffs' argument be reconciled with Daquin's decision to simultaneously challenge the DFRs on the same ultra vires ground in a petition for review filed in this Court and presumably seeking the same remedies. *See Daquin*, No. 24-60316. Although Daquin characterizes this petition as merely "preventative," Br. 27, his filing of it demonstrates that § 6306(b)(1) provides for judicial review of the very claims plaintiffs argue can be heard only by a district court.

2. Plaintiffs also argue that whatever the scope of § 6306(b)(1), Congress did not intend to divest the district court of its subject-matter jurisdiction under §§ 1331 and 1346(a)(2) to hear the same claims and exercise its equitable authority to grant equitable relief. Br. 17-18. As explained, it is at least fairly discernable from the text and structure of § 6306 that Congress *did* intend to preclude district court jurisdiction over plaintiffs' claim. Claims challenging EPCA final rules—which plaintiffs' claim unquestionably is—are channeled to the courts of appeals under § 6306(b)(1). "[W]here Congress has provided for review jurisdiction in the court of appeals, jurisdiction there is exclusive." *Leal*, 917 F.2d at 207; *see also e.g.*, *TRAC*, 750 F.2d at 77; *Federal Election Comm'n*, 479 F.3d at 1309. Even if EPCA could be read to leave undisturbed a district court's general jurisdiction, the statute's specific grant of jurisdiction to the courts of appeals for the type of claim that plaintiffs have raised "override[s]" it. *Ligon v. LaHood*, 614 F.3d 150,

154 (5th Cir. 2010) ("Specific grants of jurisdiction to the courts of appeals override general grants of jurisdiction to the district courts." (citing *Leal*, 917 F.2d at 207)). Against this specific grant of jurisdiction to the courts of appeals, the only review provision that speaks to a district court's jurisdiction carves out only two types of claims that could be brought there on initial review, neither which is applicable to plaintiffs' challenge here. *See* 42 U.S.C. § 6306(c). And that specific grant of jurisdiction to the district courts also governs over a general background grant of jurisdiction. *See RadLAX Gateway Hotel*, 566 U.S. at 645 (discussing the canon of the specific governing the general).

Plaintiffs contend that § 6306(b)(4), which affords courts of appeals the authority to grant both APA remedies and "any other remedies provided by law," "explicitly preserve[s] district court" jurisdiction over their ultra vires claim. Br. 20-24 (formatting altered). According to plaintiffs, "remedies provided by law" includes "longstanding equitable remedies, such as declaratory and injunctive relief against ultra vires action," Br. 23, and by preserving such remedies, Congress necessarily preserved corresponding causes of action, which lie in district court, *see* Br. 33. But § 6306(b)(4) cannot bear the weight plaintiffs place on it. That provision speaks of remedies, not causes of action or grants of jurisdiction. And, more particularly, it addresses remedies provided by *law*, not equity. For example, under § 6306(b)(4), a court of appeals could grant relief under the All Writs Act. But the court could not grant freestanding equitable relief untethered to a statute or other source of law.

27

Plaintiffs make much of the similarly worded remedies provision contained in § 701(f) of the Food, Drug, and Cosmetic Act (FDCA), which provides that: "The remedies provided for in this subsection shall be in addition to and not in substitution for any other remedies provided by law." 21 U.S.C. § 371(f)(6). According to plaintiffs, this provision "was understood to have 'saved as a method to review a regulation . . . whatever rights exist to initiate a historical proceeding in equity to enjoin the enforcement of the regulation, and whatever rights exist to initiate a declaratory judgment proceeding." Br. 27 (quoting H.R. Rep. No. 75-2139, at 11 (1938)). Plaintiffs appear to suggest that the Supreme Court embraced this view of the provision in *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), and also contend that "Congress transplanted" the statutory language into EPCA when it was later passed. Br. 28. Putting these assertions together, plaintiffs argue that EPCA's remedies provision must have the same meaning: "[W]hen Congress borrows language from an earlier statute, it is presumed to adopt the settled judicial construction of that language." *Id.* Plaintiffs also suggest that Justice Gorsuch's concurrence in *Axon*, 598 U.S. at 210, underscores the point. Br. 29.

The first problem for plaintiffs is that *Abbott Laboratories* did not interpret the FDCA's remedies provision in the way plaintiffs suggest. Apart from referencing this solitary remark from a House Report, the Court did not engage with the scope of the provision at all, except to hold that the text of the provision (not the House Report) "buttressed" the Court's conclusion that Congress did not intend to eliminate judicial

review of certain unenumerated kinds of agency action, because were it otherwise, the statute's remedies provision would never "come into play." *Abbott Lab'ys*, 387 U.S. at 144-46. The Court's reference to the House Report can hardly be taken as explicit or implicit approval of its content, or the Court's view that such a remedies provision preserved equitable causes of action untethered from any provision of law. Moreover, language contained in a House Report in connection with a different statutory review scheme is entitled to no weight. And, in all events, it would be a stretch (to say the least) to find that Congress *sub silentio* incorporated that interpretation in an entirely different statute that creates an entirely different review scheme, especially in the absence of any "settled judicial construction," Br. 28, of the same language.

Plaintiffs' reliance on Justice Gorsuch's concurrence in *Axon* is also misplaced. *Axon* concerned the Securities Exchange Act, which also contains a remedies provision. But unlike the remedies provision here, § 78bb(a)(2) of the Securities Exchange Act says that "the rights and remedies" granted by the Act "shall be in addition to any and all other rights and remedies that may exist at law *or in equity*." 15 U.S.C. § 78bb(a)(2) (emphasis added). In light of this language, Justice Gorsuch in *Axon* explained that such a provision "does not preclude 'traditional avenues of judicial relief,'" including "a suit in district court under § 1331 seeking to enjoin unconstitutional conduct." 598 U.S. at 210 (Gorsuch, J., concurring in judgment). EPCA's remedies provision is not so capacious.

Relying on *Nuclear Regulatory Commission*, plaintiffs claim that it would be "anomal[ous] . . . if remedies for ultra vires claims were presumed to have been transferred to the courts of appeal." Br. 33-34. But the Court's statement that "no precedent supports bringing an ultra vires claim in a court of appeals in the first instance" was made to underscore the Court's conclusion that the plaintiffs' claim was *not* a true ultra vires claim, but instead a statutory claim that fell within the statute's channeling provision. 605 U.S. at 682. Likewise, here: Plaintiffs' challenge to the Department's statutory authority to issue the DFRs is precisely the sort of claim contemplated by § 6306(b)(1)'s jurisdictional grant to the court of appeals. There is nothing "anomal[ous]" about it being heard there in the first instance, just as there would be nothing anomalous about an identical APA claim being heard by the appellate courts in a petition for review.

3. Plaintiffs' remaining arguments applying *Thunder Basin* are unavailing.

a. Plaintiffs urge that exclusive jurisdiction in the courts of appeals does not provide "meaningful judicial review" because their "core injury is not confined to the 2024 rules" but "persists so long as [the Department] maintains and enforces its ultra-vires regulatory scheme." Br. 43-44. According to plaintiffs, if the most recent rules are invalidated on the ground that the Department lacked authority under EPCA to promulgate them, that would only result in the most recent rules being set aside, leaving in place the Department's "ultra-vires regulatory scheme"—namely, the 2012 DFRs. Br. 44. Plaintiffs are wrong for at least two reasons.

*First*, plaintiffs do not explain why setting aside the DFRs would "merely reset[] the agency's standards to prior illegal standards." Br. 44. Indeed, as a practical matter, such a "reset"—at least one that has any real-world impact on plaintiffs—is incredibly unlikely. If this Court were to hold that the Department lacks authority to regulate water usage for dishwashers and clothes washers and invalidated the rules on that basis, the Department could not maintain the standards contained in the previous DFRs as a matter of law because it would have no statutory authority to enforce them. As soon as the previous DFR sprang back into existence, the Department would be forced to propose a rescission or propose a new rule returning the standards for these appliances to the congressional standards contained in the statute. And in the interim, the agency would not (and could not) require compliance with the DFR's standards. Plaintiffs are therefore mistaken in asserting that only an injunction barring future ultra vires rulemakings could "prevent [the Department] from issuing materially identical ultra vires rules tomorrow." Br. 44. If this Court set aside the DFRs for want of statutory authority, the Department would not disregard that ruling.

Plaintiffs contend that this assurance is "empty" and cannot be "credited" because they assert that the Department "has already shown its willingness to disregard this Court's prior rulings"—namely, *Louisiana*. Br. 45; *see also* Br. 54 (characterizing the DFRs as being in "direct defiance of this Court's recent decision in *Louisiana*"). But the issue in *Louisiana* was whether the Department had properly rescinded rules that established new product classes for dishwashers, clothes washers, and clothes dryers.

This Court vacated the rescissions as arbitrary and capricious and remanded to the agency for further proceedings. Separately, in *dicta*, the Court questioned whether the Department had statutory authority to issue any rules setting water use standards for these appliances in the first place. *Louisiana*, 90 F.4th at 470-72. But contrary to plaintiffs' contentions, that was not a "ruling[]" by this Court, let alone a "precedent[ial]" one, Br. 45, 55, because petitioners did not challenge the rules on that basis, neither party briefed the issue, and the Court determined that it "need not reach the question," *Louisiana*, 90 F.4th at 472. The Department was not required to credit non-binding dicta when issuing the DFRs any more than this Court would be compelled to credit non-binding dicta in previous Court decisions.

*Second*, plaintiffs' contention fails because exclusive jurisdiction in the courts of appeals under § 6306 does not deprive them of meaningful review. Under § 6306, they can obtain APA remedies and any other remedies provided by law. For instance, plaintiffs might choose to seek remedies under the All Writs Act. That plaintiffs may not be able to succeed on such a request in a case like this does not mean that they are without a remedy. Plaintiffs' reliance (Br. 43) on *Cochran v. U.S. Securities & Exchange Commission*, 20 F.4th 194, 209 (5th Cir. 2021), is misplaced, because *Cochran* concluded that meaningful review did not exist where the plaintiff would be without any redress at all for her injury—not where, as here, a plaintiff might be unable to obtain a preferred form of redress. *See American Fed. of Gov. Emps. v. Secretary of Air Force*, 716 F.3d 633, 638 (D.C. Cir. 2013) (finding preclusion even though the scheme might not afford the

same relief available in district court because "[i]t is the comprehensiveness of the statutory scheme involved, not the adequacy of specific remedies thereunder, that counsels judicial abstention" (quotations omitted)).

Plaintiffs' dissatisfaction with a review scheme that requires them to "challeng[e] each new unlawful rule as it comes," rather than a scheme that permits a challenge to hypothetical rules yet to come, is also no reason to construe EPCA as preserving a district court's jurisdiction to adjudicate their claims here. Br. 45. Such a scheme is not, as plaintiffs urge, the sort of scheme that "*Free Enterprise Fund* condemned as not meaningful." *Id.*; *see Free Enter. Fund*, 561 U.S. at 490 (explaining that the statute's review provisions do not provide for an avenue of review for the plaintiffs' constitutional claims). At bottom, *Thunder Basin* and its progeny were concerned with providing an avenue for judicial review of a plaintiff's claim, not providing all relief imaginable to vindicate it, particularly when nothing in the statute indicates that Congress intended such relief to be available. EPCA provides plaintiffs with not just an avenue for judicial review in the courts of appeals for their claims, but ample relief to vindicate them if plaintiffs prevail.

b. Plaintiffs are equally mistaken in contending that their claims are collateral to § 6306(b)'s review provisions. As explained, plaintiffs' challenge is not a "structural, collateral challenge" like the one in *Free Enterprise Fund* or *Axon*. Instead, plaintiffs' claim rises or falls on whether the agency properly exercised its authority under EPCA. Daquin's attempt to obtain review in this Court pursuant to § 6306(b)(1) underscores

the point.  *See Miriyeva v. U.S. Citizenship & Immigration Servs.*, 9 F.4th 935, 941 (D.C. Cir. 2021) ("A claim is not wholly collateral to the claims meant to go through the review scheme if that claim is 'at bottom' an attempt to accomplish what's contemplated by the review scheme."); *Jarkesy v. SEC.*, 803 F.3d 9, 23 (D.C. Cir. 2015) (claims that "do not arise 'outside' the SEC administrative enforcement scheme" but instead "arise from actions the Commission took in the course of that scheme" were not wholly collateral to the orders from which review was sought).

 c. Finally, plaintiffs err in contending that the third *Thunder Basin* factor supports jurisdiction in the district court.  Plaintiffs express concern that exclusive jurisdiction in the courts of appeals would "displace the district court[] as the initial adjudicator of what the law is with that of the agency" as determined by the DFRs, but an agency is often the first body to interpret its governing statute—whether that interpretation is reviewed in district court or not.  Plaintiffs also argue that appellate jurisdiction relegates the court of appeals "to reviewing an administrative record crafted by the agency."  Br. 52.  But that concern is misplaced:  Plaintiffs' challenge turns on a question of statutory construction, which this Court would determine de novo, so any alleged "inadequa[cies]" in an "administrative record will not hamper [this Court's] ability to review [plaintiffs'] challenges."  *Miriyeva*, 9 F.4th at 941.  The district court correctly dismissed the case for want of jurisdiction.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

JEFFREY NOVAK
*Acting General Counsel*
*Department of Energy*
*Washington, D.C. 20585*

BRETT A. SHUMATE
 *Assistant Attorney General*

NANCY LARSON
 *Acting United States Attorney*

MICHAEL S. RAAB

 *s/ Amanda L. Mundell*
AMANDA L. MUNDELL
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7252*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue, N.W.*
 *Washington, D.C. 20530*
 *(202) 514-3469*
 *Amanda.L.Mundell@usdoj.gov*

October 2025

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Amanda L. Mundell*
Amanda L. Mundell

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8813 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Amanda L. Mundell*
Amanda L. Mundell

# ADDENDUM

# TABLE OF CONTENTS

42 U.S.C. § 6291.................................................................................A1

42 U.S.C. § 6292(a)(6)-(7) ..............................................................A1

42 U.S.C. § 6295(a), (g)(9)-(10) ....................................................A2

17 U.S.C. § 6306(b), (c)..................................................................A3

**42 U.S.C. § 6291(2), (6)**

**§ 6291. Definitions**

**For purposes of this part:**

\* \* \*

    **(2)** The term "covered product" means a consumer product of a type specified in section 6292 of this title.

    \* \* \*

    **(6)** The term "energy conservation standard" means—

        **(A)** a performance standard which prescribes a minimum level of energy efficiency or a maximum quantity of energy use, or, in the case of showerheads, faucets, water closets, and urinals, water use, for a covered product, determined in accordance with test procedures prescribed under section 6293 of this title; or

        **(B)** a design requirement for the products specified in paragraphs (6), (7), (8), (10), (15), (16), (17), and (20) of section 6292(a) of this title; and

    includes any other requirements which the Secretary may prescribe under section 6295(r) of this title.

\* \* \*


**42 U.S.C. § 6292(a)(6), (7)**

**§ 6292. Coverage**

    **(a) In general**

        The following consumer products, excluding those consumer products designed solely for use in recreational vehicles and other mobile equipment, are covered products:

        \* \* \*

        **(6)** Dishwashers.

        **(7)** Clothes washers.

    \* \* \*

**42 U.S.C. § 6295(a), (g)(9)-(10)**

**§ 6295. Energy conservation standards**

**(a) Purposes**

The purposes of this section are to—

**(1)** provide Federal energy conservation standards applicable to covered products; and

**(2)** authorize the Secretary to prescribe amended or new energy conservation standards for each type (or class) of covered product.

**(g) Standards for dishwashers; clothes washers; clothes dryers; fluorescent lamp ballasts**

\* \* \*

**(9) Residential clothes washers manufactured on or after January 1, 2011.—**

**(A)** In general.—A top-loading or front-loading standard-size residential clothes washer manufactured on or after January 1, 2011, shall have—

**(i)** a Modified Energy Factor of at least 1.26; and

**(ii)** a water factor of not more than 9.5.

**(B)** Amendment of standards.—

**(i)** In general.—

Not later than December 31, 2011, the Secretary shall publish a final rule determining whether to amend the standards in effect for clothes washers manufactured on or after January 1, 2015.

**(ii)** Amended standards.—

The final rule shall contain any amended standards.

**(10) Residential dishwashers manufactured on or after January 1, 2010.—**

**(A)** In general.—A dishwasher manufactured on or after January 1, 2010, shall—

**(i)** for a standard size dishwasher not exceed 355 kWh/year and 6.5 gallons per cycle; and

**(ii)** for a compact size dishwasher not exceed 260 kWh/year and 4.5 gallons per cycle.

**(B)** Amendment of standards.—

**(i)** In general.—

Not later than January 1, 2015, the Secretary shall publish a final rule determining whether to amend the standards for dishwashers manufactured on or after January 1, 2018.

**(ii)** Amended standards.—

The final rule shall contain any amended standards.

**\* \* \***

## 42 U.S.C. § 6306(b), (c)

## § 6306. Administrative procedure and judicial review

**\* \* \***

### (b) Petition by persons adversely affected by rules; effect on other laws

**(1)** Any person who will be adversely affected by a rule prescribed under section 6293, 6294, or 6295 of this title may, at any time within 60 days after the date on which such rule is prescribed, file a petition with the United States court of appeals for the circuit in which such person resides or has his principal place of business, for judicial review of such rule. A copy of the petition shall be transmitted by the clerk of the court to the agency which prescribed the rule. Such agency shall file in the court the written submissions to, and transcript of, the proceedings on which the rule was based, as provided in section 2112 of title 28.

**(2)** Upon the filing of the petition referred to in paragraph (1), the court shall have jurisdiction to review the rule in accordance with chapter 7 of title 5 and to grant appropriate relief as provided in such chapter. No rule under section 6293, 6294, or 6295 of this title may be affirmed unless supported by substantial evidence.

**(3)** The judgment of the court affirming or setting aside, in whole or in part, any such rule shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of title 28.

**(4)** The remedies provided for in this subsection shall be in addition to, and not in substitution for, any other remedies provided by law.

**(5)** The procedures applicable under this part shall not—

**(A)** be considered to be modified or affected by any other provision of law unless such other provision specifically amends this part (or provisions of law cited herein); or

**(B)** be considered to be superseded by any other provision of law unless such other provision does so in specific terms by referring to this part and declaring that such provision supersedes, in whole or in part, the procedures of this part.

## (c) Jurisdiction

Jurisdiction is vested in the Federal district courts of the United States over actions brought by—

**(1)** any adversely affected person to determine whether a State or local government is complying with the requirements of this part; and

**(2)** any person who files a petition under section 6295(n) of this title which is denied by the Secretary.