# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
October 6, 2026
Thomas B. Plunkett, III
Clerk

No. 25-10668

Bill Word; David Daquin,

*Plaintiffs—Appellants*,

*versus*

U.S. Department of Energy,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:24-CV-130

Before Jones, Duncan, and Douglas, *Circuit Judges*.

Dana M. Douglas, *Circuit Judge*:

Appellants challenge two rules issued by the U.S. Department of Energy pursuant to 42 U.S.C. § 6295(p), a provision of the Energy Policy and Conservation Act, arguing that the Department exceeded its statutory authority in issuing the challenged rules. The jurisdictional grant in 42 U.S.C. § 6306(b) provides for jurisdiction in the circuit courts for challenges by parties aggrieved by rules prescribed under § 6295; however, Appellants filed suit in the district court, arguing that jurisdiction there is proper. The district court disagreed and dismissed the suit. On appeal, we examine first whether Appellants have standing to pursue their claim.

Finding that they do, we next consider whether the district court correctly dismissed Appellants' lawsuit for lack of subject matter jurisdiction. Finding that it did, we AFFIRM.

I

Congress enacted the Environmental Policy and Conservation Act of 1975, Pub. L. No. 94-163, 89 Stat. 871, (codified as amended at 42 U.S.C. §§ 6201–6422 (2003)) ("EPCA") to regulate energy consumption standards for residential appliances. *Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 184–85 (2d Cir. 2004). Congress charged the Department of Energy ("DOE") with issuing standards through direct final rules ("DFRs") following requisite notice-and-comment periods. The statutory review mechanism provides that "[a]ny person who will be adversely affected by a rule [governing residential appliance standards] may . . . file a petition with the United States court of appeals for the [appropriate] circuit." 42 U.S.C. § 6306(b)(1). The EPCA provides that this statutory-review mechanism "shall be in addition to, and not in substitution for, any other remedies provided by law." *Id.* § 6306(b)(4). The Act also provides for federal district court jurisdiction in two specified scenarios: suits concerning state compliance with EPCA requirements and suits alleging the DOE has failed to initiate rulemaking when petitioned. *Id.* § 6306(c).

In the Energy Policy Act of 1992, Congress specifically empowered the Department to issue energy conservation standards for four types of appliances: showerheads, faucets, water closets, and urinals. *See id.* § 6291(1)(A), (6)(A). In the Energy Independence and Security Act of 2007, Congress established energy *and* water-use standards specifically for residential dishwashers and clothes washers. *Id.* § 6295(g). In 2012, the Department issued DFRs governing dishwashers and clothes washers that applied more stringent water-use standards than those Congress created in

the 2007 act. *See* 77 Fed. Reg. 31918 (May 30, 2012); 77 Fed. Reg. 32308 (May 31, 2012). In 2024, the Department issued two new DFRs, further reducing water-use limits in dishwashers and clothes washers and changing the measurement scheme. 89 Fed. Reg. 31398 (Apr. 24, 2024); 89 Fed. Reg. 19026 (Mar. 15, 2024). In 2025, the DOE issued notices proposing to revert to the statutory limits established by Congress because the Department believed it had exceeded its statutory authority.

In June 2024, Appellants Bill Word and David Daquin filed suit against Appellee, the U.S. Department of Energy, in the federal district court for the Northern District of Texas. Appellants sought declaratory relief that the DOE has no authority to establish water-use standards for appliances other than the four specified appliances—showerheads, faucets, water closets, and urinals. Appellants also sought injunctive relief requiring the DOE to issue new regulations returning the water-consumption standards governing dishwashers and clothes washers to those established by Congress and to preclude the Department from issuing new water-use standards for appliances that are not covered by its statutory authority.

The DOE moved to dismiss the complaint for want of jurisdiction. Appellants argued that the statutory-review mechanism providing for review by federal courts of appeal states only that aggrieved persons "may" bring suit there; however, the district court held that, in this scenario, "may means must," rejecting Plaintiffs' theory of concurrent jurisdiction. The grant of jurisdiction to the circuit courts is buttressed, the district court explained, by the carveout vesting the district courts with jurisdiction in two explicit scenarios, neither of which is implicated here. The district court also reasoned that district courts are not the appropriate channel of review for Plaintiffs' claim because the claim does not "necessitate additional factfinding by a district court to effectuate the review process." Finding that the statutory-review mechanism provided in § 6306(b)(1) stripped the

district court of its general jurisdiction, the district court granted the Department's motion and dismissed the suit with prejudice.

Plaintiffs thereafter filed a Rule 59 motion to alter or amend the judgment, requesting that the district court consider 42 U.S.C. § 6306(b)(4) and *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967). The district court denied Plaintiffs' motion. The district court observed that, although a Rule 59 motion was the appropriate procedure to urge the court to consider relevant precedent that it had overlooked, the court had not so erred in its decision. Explaining that "[l]ack of discussion does not equate to lack of consideration," the district court stated that it had intentionally chosen not to include *Abbott* in its order. The district court, nevertheless, briefly distinguished *Abbott*, explaining that the governing statutory-review scheme there provided exclusive appellate review for six specific categories and the Court refused to extend appellate jurisdiction to a seventh category. The district court also noted that *Abbott* concerned "a materially different statute" that is not instructive in the present scenario. Appellants timely appealed. *See* Fed. R. App. P. 4(a).

## II

The question of standing is a threshold matter. Appellants, who are consumers of dishwashers and clothes washers, allege standing under the "lost opportunity to purchase" theory, arguing that market compression of available features caused them injury. The DOE argues that Appellants cannot allege standing because "an alleged reduction in choice, by itself, is insufficient to establish standing to challenge the DFRs." Our court recently evaluated a similar question of standing in *Louisiana v. DOE*. 90 F.4th 461 (5th Cir. 2024). Here, as there, Appellants have standing.

To establish standing, a plaintiff must demonstrate that he has (1) suffered an injury in fact (2) that is "fairly traceable" to the defendant's

conduct and (3) is likely redressable by the judicial relief sought. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In *Louisiana v. DOE*, plaintiffs challenged an aspect of the DOE's regulation of dishwashers and clothes washers as Appellants do here, and our court found that plaintiffs, a group of states who claimed injury due to the "lost opportunity to purchase," had standing to bring their claim. 90 F.4th at 467–69.

*Louisiana* plaintiffs petitioned for review of the DOE's repeal of a rule that had created new classes of appliances with potential to offer better performance than machines available under then-applicable consumption guidelines. *Id.* at 465–66. Our court found that "the 'lost opportunity to purchase' products precluded by regulation constitutes an injury in fact." *Id.* at 467 (quoting *Weissman v. Nat'l R.R. Passenger Corp.*, 21 F.4th 854, 857 (D.C. Cir. 2021)). Specifically, our court observed that "[a] market participant with many choices is advantaged relative to a participant with fewer choices, and market participants are therefore injured when their choices are constrained by regulation." *Id.* (collecting cases).

Appellants here allege a nearly identical theory of standing to that in *Louisiana*. Appellants argue that the DOE's statutory overreach in regulating dishwashers and clothes washers diminished market options.[1] The alleged market compression satisfies the first prong of standing, injury in fact. *Id.*

Turning to the second prong of standing, establishing a "causal link" between market compression and challenged regulation is sufficient to prove traceability. *Id.* at 468 (quoting *Competitive Enter. Inst. v. NHTSA*, 901 F.2d

[1] Appellants' complaint provides that "[p]laintiffs are consumers of consumer appliances that are unlawfully regulated by the Defendant. They are harmed by these recent direct final rules, because their choice of a preferred clothes washer or dishwasher would be eliminated by these rules."

107, 114 (D.C. Cir. 1990)). The *Louisiana v. DOE* court found that plaintiffs' declarations that "they own, operate, and maintain" dishwashers and clothes washers and would opt to purchase appliances in the class eliminated by the repealed rule sufficed for traceability. *Id.* Although Appellants' complaint here did not explicitly state that Appellants would purchase the appliances that the DFRs forbid, as the plaintiffs in *Louisiana v. DOE* did, it is reasonably inferable from their complaint that Appellants would purchase those appliances if given the opportunity.[2] *See Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005) (requiring the court to draw reasonable inferences in favor of plaintiff at the pleading stage). The complaint alleges that they are injured because "their choice of a preferred" appliance is "eliminated by" the DFRs. Appellants, thus, have established that the challenged agency authority is traceable to their alleged injury.

Finally, redressability is satisfied because our court may review the lawfulness of the DFRs at issue. *Louisiana*, 90 F.4th at 469 (citing *Competitive Enter. Inst.*, 901 F.2d at 114). Accordingly, Appellants have established standing.

## III

We review a dismissal for lack of subject-matter jurisdiction de novo. *Bank of La. v. FDIC*, 919 F.3d 916, 922 (5th Cir. 2019); *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 599 (5th Cir. 2016). Here, the jurisdictional question with which we are presented requires us to determine

---

[2] Notably, the standing analysis in *Louisiana v. DOE* occurred after the pleading stage, not at the motion-to-dismiss stage as it did here. Because the district court was required to accept Appellants' asserted facts as true, it was required to accept that the DFRs would eliminate Appellants' choice of appliance from the market. *See Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005). Likewise, the court must accept as true Appellants' assertion that they are "consumers of consumer appliances that are unlawfully regulated by the Defendant."

whether the district court lacked jurisdiction to consider whether the DOE exceeded its statutory grant of authority in promulgating DFRs governing water usage in clothes washers and dish washers pursuant to § 6295.

Appellants argue that the default grant of district court jurisdiction applies because Congress neither explicitly nor implicitly stripped the district court of its jurisdiction. Alternatively, Appellants argue that their claim may be heard by the district court because it involves a non-statutory ultra vires claim and because the "savings clause" provided in § 6306(b)(4) provides a separate jurisdictional hook. Appellee, on the other hand, argues that Congress intended to strip the district court of its jurisdiction and that Appellants' ultra vires claim is nothing more than a statutory claim masquerading as an ultra vires claim.

Generally, district court jurisdiction over issues of federal question or claims challenging executive authority is proper, but Congress may explicitly or implicitly dictate a substitute review scheme. Here, Congress implicitly stripped the district court of its power to adjudicate issues arising from § 6295. Thus, we agree with the district court that the circuit courts are vested with exclusive jurisdiction over Appellants' claim.

A

Turning to the statutory scheme at issue, § 6295 provides "[f]ederal energy conservation standards applicable to covered products" and grants the agency authority to prescribe energy conservation standards for covered products. 42 U.S.C. § 6295(a). Section 6306 provides mechanisms of review for claims arising under the EPCA. *Id.* § 6306. In pertinent part, § 6306(b)(1) provides, "[a]ny person who will be adversely affected by a rule prescribed under section 6293, 6294, or 6295 . . . may . . . file a petition with the United States court of appeals for the [appropriate] circuit . . . ." *Id.* § 6306(b)(1). Part (b)(4) of § 6306 also provides what Appellants term a

"savings clause," which states "[t]he remedies provided for in this subsection shall be in addition to, and not in substitution for, any other remedies provided by law." *Id.* § 6306(b)(4). Notably, the appellate review process provided therein does not necessarily follow agency review; that is, there is no required administrative-review process that precedes other judicial review. *See id.* § 6306(b)(1). Finally, § 6306(c) provides two specific scenarios in which district court jurisdiction is proper, and Appellants do not argue that either is implicated here. *Id.* § 6306(c). The EPCA does not otherwise mention jurisdiction.

Generally, the district courts have authority to hear cases arising under the Constitution and federal law pursuant to 28 U.S.C. § 1331; however, Congress may supply an alternative review scheme that displaces district court jurisdiction. *Bank of La.*, 919 F.3d at 922; *see also Elgin v. Dep't of Treasury*, 567 U.S. 1, 8–9 (2012). Congress may strip the district court of its jurisdiction explicitly or implicitly. *Bank of La.*, 919 F.3d at 922. Congress explicitly precludes jurisdiction with statutory "'text [that] . . . expressly limit[s] the jurisdiction that other statutes confer on district courts,' such as 28 U.S.C. § 1331." *Id.* at 923 (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010)). Determining whether Congress implicitly precludes jurisdiction is a more nuanced inquiry. *Id.* "We first ask whether it is 'fairly discernible' from the 'text, structure, and purpose' of the statutory scheme that Congress intended to preclude district court jurisdiction." *Id.* (quoting *Elgin*, 567 U.S. at 10). We next consider "whether the 'claims at issue are of the type Congress intended to be reviewed within th[e] statutory structure.'" *Id.* (quoting *Free Enter. Fund*, 561 U.S. at 489). *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), provides three factors that guide our analysis of the second question: "(1) whether precluding district court jurisdiction 'could foreclose all meaningful judicial review'; (2) whether the [plaintiff's] 'suit is wholly collateral to a statute's review

provisions'; and (3) whether its claims are 'outside the agency's expertise.'" *Id.* (quoting *Elgin*, 567 U.S. at 15). "When the answer to all three questions is yes, 'we presume that Congress does not intend to limit jurisdiction.'" *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 186 (2023) (quoting *Free Enter. Fund*, 561 U.S. at 489).

B

Here, it is "fairly discernible" that Congress intended to provide an alternate statutory scheme that strips the district court of its jurisdiction. Even when the jurisdictional statute does not use the word "exclusive," a congressionally dictated forum for judicial review of administrative action is exclusive. *FEC v. Reform Party of U.S.*, 479 F.3d 1302, 1309 (11th Cir. 2007). The only two circuit courts to consider a similar challenge found that the jurisdictional grant in § 6306(b) strips the district court of its general jurisdiction. *Abraham*, 355 F.3d at 194; *Cal. Energy Comm'n v. DOE*, 585 F.3d 1143, 1150 (9th Cir. 2009).

The EPCA's text and structure demonstrate congressional intent to place initial jurisdiction in the courts of appeals. *Abraham*, 355 F.3d at 193. Section 6306(b) specifically provides that persons affected by consumer appliance regulations "may . . . file a petition with the United States court of appeals . . . for judicial review of such rule." 42 U.S.C. § 6306(b)(1). "Specific grants of jurisdiction to the courts of appeals override general grants of jurisdiction to the district courts." *Ligon v. LaHood*, 614 F.3d 150, 154 (5th Cir. 2010) (citing *Leal v. Szoeke*, 917 F.2d 206, 207 (5th Cir. 1990)). To find that Congress did not intend to strip the district court of its jurisdiction "gives rise to the possibility of both this court and the district court passing on [a plaintiff's] question . . . . Such bifurcated and piecemeal review is disfavored." *Abraham*, 355 F.3d at 194.

Moreover, the statute explicitly carves out jurisdictional grants to the district court for two categories of disputes: suits determining state compliance with EPCA requirements and suits challenging the denial of rulemaking to amend a product standard. 42 U.S.C. § 6306(c). Such jurisdictional exceptions underscore our conclusion that Congress intended to provide for exclusive jurisdiction in the circuit courts for scenarios outside those listed in the jurisdictional carveout. *See Cal. Energy Comm'n*, 585 F.3d at 1148 (observing that "[i]t seems most likely that Congress listed one group of cases to be decided initially by the circuit courts, and another class to be decided in the first instance by the district courts"); *see also Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 755 (5th Cir. 2011) (recognizing "bifurcated jurisdictional scheme" in another agency jurisdictional statute); *Abraham*, 355 F.3d at 194.

Similarly, we find that Appellants' claim is "of the type Congress intended to be reviewed within the statutory structure." *Bank of La.*, 919 F.3d at 923 (citation modified). As explained below, the three *Thunder Basin* factors indicate that Congress intended to strip the district court of its jurisdiction.

Beginning with the first *Thunder Basin* factor, precluding district court jurisdiction does not "foreclose all meaningful judicial review." *Id.* Appellants may seek judicial review in the circuit court, 42 U.S.C. § 6306(b)(2), and they have not demonstrated that the district court could provide any relief that our court cannot. As the Supreme Court has noted, "review of agency action in a court of appeals can alone meaningfully address a party's claims." *Axon Enter., Inc.*, 598 U.S. at 190 (citation modified); *see also Bank of La.*, 919 F.3d at 926 (recognizing that a statutory grant of jurisdiction in circuit court, by itself, demonstrates that the scheme provides meaningful judicial review). This case is unlike *Free Enterprise Fund v. PCAOB*, in which the Supreme Court found that precluding district court

jurisdiction would foreclose all meaningful judicial review because a party would have to "bet the farm" to challenge the agency action by first "taking the violative action." 561 U.S. at 490. Here, there is no precursor violation that Appellants must trigger to bring suit; thus, Appellants need not incur harm to bring suit. Finally, there is no additional fact-finding that must be conducted in the first instance by the district court to guide resolution of Appellants' claim. *See Abraham*, 355 F.3d at 193 (observing that "[r]ulemaking proceedings do not ordinarily necessitate additional factfinding by a district court to effectuate the review process").

Second, Appellants' challenge is not collateral to the statutory review scheme. As Appellee indicates, Appellants' "claim rises or falls on whether the agency properly exercised its authority under EPCA." "A claim is not wholly collateral to the claims meant to go through the review scheme if that claim is 'at bottom' an attempt to accomplish what's contemplated by the review scheme." *Miriyeva v. U.S. Citizenship & Immigr. Servs.*, 9 F.4th 935, 941 (D.C. Cir. 2021) (quoting *Heckler v. Ringer*, 466 U.S. 602, 614 (1984)). Here, Appellants' challenge to the DOE's rulemaking authority is "inextricably intertwined" with a challenge to the rules promulgated pursuant to § 6295 because it targets the agency's authority to promulgate rules that fit within the confines of § 6295. *See Heckler*, 466 U.S. at 614 (holding that claims targeting agency's procedure are not collateral to challenges to the decision). Thus, it is not wholly collateral to the statutory review scheme.

The third and final *Thunder Basin* factor does not provide much guidance in this scenario, where the statutory scheme contemplates circuit-court review that is not necessarily preceded by agency review. *See* 42 U.S.C. § 6306(b)(1). Appellants argue that because their claim concerns a constitutional matter that falls outside of the area of expertise of the administrative agency, Congress must have intended for jurisdiction to lie in

the district court. But Appellants' argument misses a key point: district court jurisdiction here does not supplant agency jurisdiction. Here, we examine whether the appellate court properly has jurisdiction to hear Appellants' challenge in the first instance, not whether the claim should be heard by the agency or by a court in the first instance. *See Axon Enter., Inc.*, 598 U.S. at 186. Because the agency's expertise to adjudicate Appellants' claim has no bearing on the jurisdictional question before us, the third *Thunder Basin* factor does not tip the scale against jurisdiction in the circuit courts. Accordingly, the district court properly found that it lacked jurisdiction.

C

Appellants' other jurisdictional theories likewise lack merit. Appellants argue that the district court had jurisdiction because their claim is a non-statutory ultra vires claim; however, Appellants have not shown that their challenge is a true ultra vires claim. Ultra vires review is "strictly limited . . . to the painstakingly delineated procedural boundaries of *Leedom v. Kyne*, 358 U.S. 184 (1958)." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (citation modified). Appellants also argue that § 6306(b)(4) intended to preserve district-court review of its claim, which Appellants argue arises in equity. This is not so.

Appellants' ultra vires claim is nothing more than a "statutory-authority argument" "dress[ed] up . . . as an ultra vires claim." *See id.* at 682. As the Supreme Court recently observed, "ultra vires review could become an easy end-run around the limitations of . . . judicial-review statutes"; thus, the *Kyne* exception is exceedingly narrow. *Id.* at 681. That is, the *Kyne* exception "applies only when an agency has taken action entirely in excess of its delegated powers *and* contrary to a specific prohibition in a statute." *Id.* (citation modified).

Although Appellants argue that both prongs of the *Kyne* test are met, Appellants fail to provide a clear statutory prohibition that the DOE defied. Appellants only state that because Congress expressly limited the DOE's authority to regulate appliances to four specific appliances, not including dishwashers and clothes washers, Congress clearly prohibited the DOE from regulating additional appliances. A positive grant of authority does not equate to an express prohibition. *See id.* at 682. Moreover, ultra vires review is not available when a statutory review scheme otherwise provides "a meaningful and adequate opportunity for judicial review," or "forecloses all other forms of judicial review." *Id.* at 681. Thus, ultra vires review is unavailable to Appellants here.

Finally, we dispense with Appellants' claim that they can pursue their suit in the district court because it is an equitable claim that falls under § 6306(b)(4), which they have dubbed the "savings clause." Section 6306(b)(4) provides that "[t]he remedies provided for in this subsection shall be in addition to, and not in substitution for, any other remedies provided by law." 42 U.S.C. § 6306(b)(4). Appellants understand this language to preserve district-court review of their claim, which they argue arises in equity. Disregarding the accuracy of Appellants' characterization of its challenge as an equitable claim, Appellants fail to explain how a statutory provision preserving "other remedies *provided by law*" would afford a jurisdictional carveout for remedies *arising in equity*. In a similar vein, Appellants' reliance on JUSTICE GORSUCH's concurrence in *Axon Enterprise, Inc.*, 598 U.S. at 210 (GORSUCH, J., concurring), is misplaced because in *Axon* the court interpreted the remedies provision of the Securities Exchange Act, which provides that "the rights and remedies" granted therein "shall be in addition to any and all other rights and remedies that may exist at law *or in equity*." 15 U.S.C. § 78bb(a)(2)) (emphasis added).

Therefore, Appellants have not demonstrated how § 6306(b)(4) grants the district court jurisdiction over their claim.

## V

For the foregoing reasons, the judgment of the district court is AFFIRMED.